The next argument will be in Case No. 23-6840, United States v. Williams Ms. Scott Cope, whenever you're ready Good morning. May it please the Court, my name is Anna Scott Cope. I represent Mr. Williams on appeal. I did not represent him in the proceedings below. Over 97% of federal criminal cases are resolved by guilty plea. In that world, enforcing appellate waivers that are not supported by adequate consideration invites prosecutorial overreach and precludes this Court's review of important legal issues. Here Williams obtained no meaningful benefit in exchange for waiving his right to challenge the constitutionality of the sole statute of his conviction. This Court should decline to enforce that waiver because it is contractually invalid due to lack of consideration, and failure to do so would invite a complete miscarriage of justice. He obtained a three-level reduction in his offense level as a result of signing the plea. Is that correct? He obtained a three-level, the government stipulated to a three-level reduction. But so is that not consideration? Consideration is a promise to do something that a party is not already obligated to do. Under both the Guidelines Commentary, 3E1.1, and this Court's precedent, including Luckman, the government, quote, should not withhold a reduction for acceptance of responsibility based on whether the defendant agrees to waive his or her right to appeal. In other words, Right, but beyond objecting to that, I mean, they affirmatively requested that, and the, I guess, the third point for acceptance of responsibility is one that the government is entitled to make a motion for that additional point. So it wasn't, they were doing something beyond what they had to do, right? It's not that they had to do it, it's that under, again, under this Court's precedent and the Guidelines, they should not withhold that third point based on. Right, and they shouldn't withhold it as a means of getting someone to plead or waive rights. I agree, but not withholding it is not the same as affirmatively saying to the judge, yes, we agree, you should give that. Or even, you know, they could take no position on the acceptance of responsibility points, right? They could take no position on it. I think it would be a valid point to appeal if they did so solely based on whether or not Williams had entered into a plea agreement or pled guilty open pursuant to a PIM and TELL letter. Under this situation, the three-point reduction for acceptance of responsibility was something that was available to Williams whether or not he pled open pursuant to a PIM and TELL letter or pled pursuant to a plea agreement. He pled guilty six months after being indicted. There was no indication that he had not or would not accept responsibility. The only dispute was over the application of a four-level enhancement under the Guidelines, which the government included in the plea agreement. It did not say that it was going to withhold from seeking that either. Now, one of the things that I want to backtrack on is I know the government cites a lot of summary orders from this court, some of which say that, you know, adequate acceptance was found under a plea agreement. In most of those summary orders, and at our reply on pages four to six, we distinguish most of those summary orders because they include something in addition to the three-point reduction. Even if that's not mentioned in the order, the actual plea agreement did, the government did make some sort of agreement, some sort of consideration in addition to the three points. But almost all of those summary orders rely on a single quote from Brunetti, a precedential opinion, where this court found that the defendant had bargained for and received, quote, the chance at a reduced sentence. And I just want to take a moment and kind of remind the court what was discussed in Brunetti. That was where the government agreed to allow the defendant, after pleading guilty, to come in to proffer to pursue a 5k letter. That was the chance at a reduced sentence. Here, there was no such chance at a reduced sentence. This is about the guidelines range. This was about a reduction of responsibility that, for acceptance of responsibility that was otherwise available to Williams, and a guidelines range that would be ultimately determined by the court, not a 5k letter that was entirely at the government's discretion. Um, even setting aside the lack of consideration in this plea agreement, the court should also consider the fundamental miscarriage of justice that will occur if it is to enforce this appellate waiver. Williams stands convicted of a single count and was only ever charged with a single count of being a felon in possession. This court has said that it can apply general fairness principles to invalidate particular terms of a plea agreement where such a miscarriage of justice would occur. And in Cook, the most recent opinion from this court on that issue, it specifically carved that out as something that was not being decided in that order. Here, that miscarriage of justice would be for him to be convicted of something that is no longer a crime under Bruin. Okay, if we decide that it is still a crime under Bruin, um, there's no, there's nothing further to, to argue. Is that right? Or would you still say there was lack of consideration on it? I would still say there's lack of consideration. Um, the government is not arguing, uh, that the plea agreement precludes his, um, appeal of his sentence because his sentence was higher than the stipulated guidelines range. So, so there is still a live issue, even if, um, 922 G1 is deemed constitutional under Bruin. Um, am I right here that the, the guilty plea, uh, Mr. Williams' guilty plea was, came after Bruin came out? So, and if that's the case, then how was it not knowing involuntary that, you know, the argument of unconstitutionality of 922 was available? So his guilty plea was after Bruin was decided. Um, his indictment was before Bruin was decided. So at the time of his indictment, there was no basis to challenge his conviction under, or sorry, his charge under 922 G1. Um, in the Ninth Circuit in Duarte, which has since been vacated because they're going to be hearing it en banc, um, had said that under those circumstances, the court should review de novo because there was no reason for him to challenge that statute under the court's existing precedent. Now that did change while he was incarcerated. Um, and I, it is not part of the record whether or not his counsel and him at the time had a conversation about the potential impact of Bruin, the civil case on his criminal charge. Um, since that time, other courts have found that Bruin and Rahimi leave open the possibility of as applied charges to the constitutionality of 922 G1. And here that as applied charge, that as applied challenge, um, is particularly poignant because Mr. Williams has never been convicted of a violent offense. His prior felonies include a regulatory violation for not possessing a license, um, for a pistol or firearm, um, for a witness tampering with no further facts available and for failing to appear. Um, those are not indications of dangerousness or someone that would be, whose right to carry a firearm has a history and tradition of being restricted in this country. Thank you, counsel. You've got a question. Uh, good morning. May it please the court, Ross Weingarten from the district of Connecticut, uh, the U S attorney's office for the district of Connecticut for the United States. First, the appellate waiver in the plea agreement in this case is enforceable. And so this court need not take up appellant's constitutional challenge to 922 G. His guilty plea was knowing and voluntary. And the agreement was supported by consideration nor would enforcing the waiver amount to a miscarriage. I know you're, I'm sure you're going somewhere, but so what is the consideration here? Um, because, um, your friend on the other side was pointing out that if the consideration is limited to, uh, the government's recommendation as to acceptance of responsibility, which ultimately is the judge's decision to make, what, what is the benefit that he is? What is the consideration here? Uh, your honor, I think the consideration here starts with, um, the three points off for acceptance of responsibility, including as your honor said, the fact that the government affirmatively made the motion for the third point off. I also think it's important your honor to draw a distinction, uh, between, uh, the facts here and the Lutchman case, which my friend relies on. Um, uh, Mr. Williams relies on in his brief in Lutchman, the guidelines calculation was above the statutory maximum, even with the three points off for acceptance of responsibility. So the three points off, um, effectively had no effect. It didn't do anything for the defendant there. And so the court ruled that there was no consideration because, um, the defendant in Lutchman had no reasonable opportunity to argue for a lower sentence. That's not the case here. Here, the statutory maximum at the time was 10 years and the guidelines calculation in the plea agreement was significantly lower, whether the four point enhancement for possessing the firearm in connection with another felony applied or not. The guidelines was either 30 to 37 months, significantly lower than 10 or even lower than that. And so I do think, um, that, uh, based on Brunetti, this plea agreement gave Mr. Williams, um, an opportunity, uh, to argue for a lower sentence. The fact that he got an upward variance, uh, is not relevant under Brunetti to the question of whether there was consideration. And, um, as my friend pointed out, there are a number of summary orders from this court, including the Hudson case, um, that the government cited in its 28 J letter stating that the three points off is consideration. And so I do think there was consideration in this plea agreement, Your Honor. So the consideration is more the government's position than the chance to reduce sentence language. Your Honor, I think the consideration here is the fact that the government was giving something up, that both parties received something. And in this case, Mr. Williams received the opportunity to argue for a lesser sentence, um, based on the guidelines calculation in the plea agreement, uh, as well as the three points off for acceptance of responsibility and the fact that his appellate waiver in the plea agreement was 37 months, uh, which is, as my friend pointed out, um, a live issue here today. Uh, that's different from Lutchman as well. In Lutchman, the plea, uh, it's interesting the way you framed it just now, that it's the consideration is both parties giving something up. So what is it that the government has given up? Uh, I think the government has given up the, the government affirmatively made the motion for the third point off for acceptance of responsibility, as well as agreeing to a guidelines range well below the statutory maximum. So, uh, putting aside the consideration, Your Honor, I think that, uh, there simply would not be a miscarriage of justice if this court decided to enforce, um, enforcing the waiver would not amount to a miscarriage of justice. Excuse me, Your Honor. Um, this court has not endorsed the sort of miscarriage of justice exception that, uh, appellant proposes. And even if it had, this is not the right case for the reason that Your Honor, uh, pointed out, which is the timing here. Um, appellant seeks to invalidate his waiver to challenge the constitutionality of the statute of conviction 18 USC 922 G based on Bruin, but Bruin was decided approximately seven months before his change of plea. In other words, uh, appellant knew about Bruin and he voluntarily agreed to waive his constitutional challenge. Anyway, he could have filed a motion to dismiss prior to, um, his change of plea. He didn't do so. Next year honors with respect to the application of the four level enhancement in this case for possessing a firearm in connection with another felony conviction. Um, the district court did not abuse its discretion. Um, the standard here is clear error. And as the case law makes clear, if there are two permissible views of the evidence, then the fact finder's choice cannot be clearly erroneous. Uh, here, the district court's view was not only permissible. It was correct at the Fatico hearing. Uh, in this case, the evidence presented showed that the appellant possessed the firearm in connection with first degree attempted assault. He shot at the original assailant after the initial shooting had stopped. And he did not, as the district court pointed out, exercise his duty to retreat. Instead, he ran towards the bullets. He ran towards the shooting to get his gun. In other words, as the district court found, he shot back in retribution, not in self-defense. And finally, um, the sentence imposed by the district court of 48 months, which represents a small upward variance from the top of the applicable guidelines range, but was 12 months lower than the sentence requested by the government, was reasonable based on the evidence set forth, uh, before the court. Um, the district court clearly weighed the relevant 3553A factors, including the dangerousness of the conduct here, as well as the mitigating factors, including the appellant's, uh, difficult background to arrive at the appropriate sentence. The appellant disagrees with the weight that the district court afforded those factors. Uh, but that is not a basis to upset his sentence. I'm happy to answer any questions, but otherwise the government will rest on its brief. Thank you, counsel. Thank you. We'll hear rebuttal. Thank you, your honors. To be clear, the government gave up nothing here. It did not agree that it would not appeal any sentence that was, um, within the guidelines range or below the stipulated guidelines range, and it didn't even offer Mr. Williams the chance at any kind of reduced sentence. In fact, at sentencing, the government asked for an upward variance. The government requested a sentence of 60 months, which is above the stipulated guidelines range. The guidelines range that was contained in the plea agreement is identical to the one that would have been in a Pimentel letter. It is not consideration. Uh, the government brought up Hudson as a case. In that case as well, if you go back and read the actual plea agreement there, the government made an additional concession in addition to the three points. It allowed the defendant to challenge on appeal the application of the four-point sentencing enhancement, such as the one that was applied here. That is an additional concession that it did not have to make that would not have been included in a Pimentel letter. Because there is no consideration, this contract is invalid, and the court should reach the fundamental constitutional issues that are present in this appeal. Now, as for the sentence, the decision of the district court was insufficiently supported by an explanation, both as to why it found that Mr. Williams was acting with the intent to physically Mr. Williams was not acting with in defense of himself and his others and others. Now, just to set the scene, Mr. Williams' minor daughter, his friends and family were all there. He and the other individuals present all believed that there were multiple assailants that were shooting at them in the parking lot. There is no guarantee that running into a building would have prevented future shots being fired at him, his friends, and his family. He shot in the direction, and as he said in his post-arrest interview, to scare off the guys, plural, that were shooting at him and the others. He did so to scare them off, and it had that intended effect. He did not do so, and there was no evidence indicated that he did so to physically injure the assailant. But what do you make of the surveillance video showing that Mr. Williams was running actively toward the assailant, and he shot after the assailant had taken off? So two points. My understanding is that he shot from behind his car and then ran toward the embankment. That is a steep drop-off, so he couldn't see where the assailant or multiple guys, as he thought, were actually shooting from. He was shooting in that general direction, and that is consistent with the officer's report afterwards as well. If he ran over in that direction, it was to make sure that they had actually fled. You can't shoot at something to hurt it if you can't see it. He couldn't see the assailant. He thought there were multiple shooters. All of these shots, there were over 50 shots fired in a period of 90 seconds. I've been speaking longer than that. Boom, boom, boom, boom, boom, all over the place. He had no idea where these people were coming from, and there was no proof to the contrary. He was acting in defense of not only himself, but of the others that were present as well, and the government did not disprove that. It is their burden to do so in the Fatico hearing. At a minimum, this court should remand so that the district court can clarify what evidence it was relying on in determining that he had the specific intent required for assault in the first degree, and that he was not acting in defense of self and others. Thank you, counsel. Thank you both. We'll take the case under advisement. The remaining cases on the calendar for today are on submission, so that concludes our business for today, and I'll ask the courtroom deputy to